## LAYMANCE v. LAYMANCE et al.

APPEAL. *Failure to file record. Abandonment.* If the failure to file a record at the succeeding term of the Supreme Court after appeal was prayed, is due to the delay of the clerk, and there is no evidence of abandonment of the appeal, the appellee is not entitled to an affirmance.

### FROM MORGAN.

Appeal from the Chancery Court at Wartburg. D. K. YOUNG, J.

S. R. VANCE for complainant.

SEVIER & WALKER for defendants.

FREEMAN, J., delivered the opinion of the court.

A motion is made in this case to affirm the decree below, for failure on the part of appellant to file the record at succeeding term, after the appeal was prayed and granted, and on the assumption that the appellant has failed to prosecute or has abandoned the appeal.

While it is settled an officer may file the record for affirmance, if the appellant fails or refuses to prosecute the appeal prayed, we do not think this is the case contemplated. It is clear the failure to file the record was the delay of the clerk and master of the chancery court, and there is not only no evidence of abandonment of the appeal, but, on the contrary, an evident purpose to prosecute, the delay in getting the record to this court being caused by the neglect of the clerk of the court below. There has not, it is true, been energetic action on the part of the appellant to get the record forwarded, but the principle of the cases on this question is not to enforce a forfeiture of the right to appeal, but to enable the party having a judgment or decree, to prevent its indefinite suspension by an appellant, who refuses himself, or is culpably negligent, in not having the record filed. We do not find such culpable negligence in this case. The motion is disallowed.

The case, on the merits, is substantially this: Complainant was the wife, and now the widow, of John W. Laymance, she being about thirty-five years of age, he upwards of seventy. The old man being in feeble health, in what proved to be his last illness, on November 28, 1880, executed a will, in which he devised

to respondents, his children by a former marriage, all his real estate, worth about $4,000; his personal property, except $250 in money, and some other property of not much value, he bequeathed also to his children; the $250 and other excepted articles being given to his widow. At the same date he executed deeds of conveyance of the lands to his children, in accord with the will, reserving, however, a life estate to himself. He died in January, after this. The wife joined in the execution of the deeds, and her privy examination, as now appears, in the record, is regular and formal.

She urges the invalidity of the deeds on the ground that she was ignorant and illiterate, and did not clearly understand her rights; and to use the language of her bill, she signed and acknowledged them against her own will and inclination, and in the presence of and at the special solicitation and direction of her husband, who had by fraud and undue influence been procured to sign the deeds himself. She then adds, "her own signature was obtained in the same manner, that is, by fraud and undue influence, and she signed them in ignorance of her rights."

The respondents deny the fraud and undue influence as charged, and the case was heard on this issue by the chancellor, who dismissed complainant's bill, from which there is an appeal to this court.

It would be useless to go into the details of the testimony in this case. It suffices to say, that the chancellor's decree is abundantly sustained. The testimony of complainant herself would only make out the case of signing a deed at request of her husband, and

---

a reluctance to do so, but yielded because of a desire to do as he wished. But as to any fear or undue influence prompting her act, she says very frankly, that she could not have been compelled by fear, as she would have died before she would have signed it, except to please the old man.

The testimony of defendants is overwhelming that she did sign the deed with a full understanding of what she was doing, and without the slightest constraint from any one.

The chancellor's decree is undoubtedly correct, and must be affirmed, with costs.